# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## CHICAGO DIVISION

| | |
|---|---|
| **CHANDRA L. JOINER,** | |
| **Plaintiff,** | **Case No.: 1:18-cv-03060** |
| **v.** | **Hon. Elaine E. Bucklo** |
| **SWC GROUP, L.P., f/k/a SOUTHWEST CREDIT SYSTEMS, L.P.,** | |
| **Defendant.** | |

## DEFENDANT SOUTHWEST CREDIT SYSTEMS, L.P.'S
## MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant Southwest Credit Systems, L.P. ("SWC"), and files its Motion for Summary Judgment, and will show onto this Court as follows:

## I. INTRODUCTION

Chandra Joiner ("Plaintiff") filed this lawsuit on April 30, 2018, complaining of alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"). Doc. 1. Plaintiff alleges SWC violated the FDCPA by continuing to call her after she requested calls to cease and by not sending her an initial letter with the notices required under 15 U.S.C. § 1692g(a). *Id*. Plaintiff alleges SWC violated the TCPA by placing calls to her cellular telephone using an automatic telephone dialing system ("ATDS") without prior express consent to do so. *Id*.

By this motion and the evidence attached hereto, SWC establishes no genuine issue of material fact exists as to any of Plaintiff's allegations, and that SWC is entitled to summary judgment under both the FDCPA and TCPA. As for the FDCPA, there is conclusive evidence that SWC sent Plaintiff the initial § 1692g(a) notice letter to the address she resided at and received the

electricity services to which the debt was owed, and that after the only time Plaintiff' requested calls to cease, SWC placed no more calls. As for the TCPA, no violation occurred as SWC does not use a dialing system that qualifies as an ATDS, as the system used by SWC has been determined to not qualify as an ATDS by various district courts. Therefore, SWC requests this Court grant its Motion for Summary Judgment and dismiss all of Plaintiff's claims.

## II. ARGUMENTS AND AUTHORITIES

### A. Standard of Law

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court views the record in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248, 106 S.Ct. 2505. On cross-motions for summary judgment, the Court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co*., 427 F.3d 1038, 1041 (7th Cir.2005); *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013).

To determine if the collection letters at issue violate the FDCPA as alleged by the Plaintiff, courts examine the letters from the standpoint of the so-called unsophisticated consumer or debtor. *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564–66 (7th Cir. 2004) (reviewing § 1692e, § 1692f, and § 1692g claims under unsophisticated consumer/debtor standard). While the unsophisticated debtor is considered "uninformed, naive, or trusting," he is nonetheless deemed to possess "rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Id*. (internal quotations omitted). Further, the unsophisticated-debtor

standard is an objective one and is not the same as the rejected least-sophisticated-debtor standard; accordingly, courts disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters. *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000); *Gammon v. GC Servs., L.P.*, 27 F.3d 1254, 1257 (7th Cir. 1994). To that end, a mere claim of confusion is not enough: a plaintiff must show that the challenged "language of the letters unacceptably increases the level of confusion." *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999) (emphasis omitted). Under this standard, a plaintiff's anecdotal proclamations of being confused will not suffice: a collection letter cannot be confusing as a matter of law or fact "unless a significant fraction of the population would be similarly misled." *Pettit*, 211 F.3d at 1060; *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574–75 (7th Cir. 2004).

## B. Defendant sent the 15 U.SC. § 1692g(a) notice letter to Plaintiff.

Plaintiff alleges SWC "through its initial communication demanded payment of the subject debt from [her]… and failed to adequately send Plaintiff her right to dispute the validity of the subject debt within five days of the initial communication." Doc. 1 at 7. However, evidence establishes that the initial communication between SWC and Plaintiff occurred on January 5, 2018 by telephone, and the very next day, SWC's § 1692g notice letter was requested and sent to Plaintiff. Exhibit A at 2; Exhibit B.

Section 1692g(a) of the FDCPA states the following:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). "[C]ourts have found that actual receipt of a letter providing notice under § 1692g(a) is not required; all the statute requires is sending of the letter." *Duby v. Shermeta, Adams & Von Allmen, PC*, Case No. 12-12775 (E.D. Mich. 2012); *Claxton v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 09-13157, 2011 WL 672214 (E.D. Mich. Feb. 17, 2011) (finding that "[t]he plain language of section 1692g(a) does not require Defendant to prove Plaintiff actually received the letter...."); *Zamos v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777, 785 (N.D. Ohio 2006) (holding "the fact that Plaintiff did not receive the notice does not support a violation of 15 U.S.C. § 1692g(a)."); *see also Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999) (holding that "[t]he plain language of section 1692g(a) does not require that a Validation of Debt Notice must be received by a debtor. Instead, the plain language states that such a Notice need only be sent to a debtor.")

The affidavit of Jeff Hazzard, COO of SWC, attached hereto provides testimony that the first communication between SWC and Plaintiff was a telephone call on 1/5/2018 at 9:23 am. Exhibit C at 1 (1/5/2018 9:19AM). Because SWC made its initial communication with the debtor, its system automatically requested the § 1692g letter for Plaintiff's debt to be generated and sent to the address associated with the account.[1] *Id*.; Exhibit B (letter). Such letter was generated and

---

[1] Plaintiff testified that this was the address on the letter was the same as the address that she received the service at. Exhibit E at 5 (*Deposition of Plaintiff* at 29).

sent on January 6, 2018, which is within five days of the initial communication with Plaintiff, as required by § 1692g(a). Then turning to the letter, the letter contains all necessary requirements of § 1692g(a). Exhibit B. Therefore, Plaintiff's FDCPA § 1692g claims should be dismissed.

**C. SWC ceased calling Plaintiff after her only request for calls to cease.**

Plaintiff alleges SWC violated FDCPA § 1692c(a)(1) "when it continuously called Plaintiff after being notified to stop." Doc. 1 at 5. Plaintiff further alleges that SWC called her "no less than 27 occasions." *Id*. The provision of the FDCPA that Plaintiff asserts here states:

> "[w]ithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location…."

FDCPA § 1692c(a)(1). Plaintiff makes no allegations that SWC called before 8:00 am or 9:00 pm, and SWC's account notes reflect that no calls occurred outside of these times. Doc. 1; Exhibit C.

SWC spoke with Plaintiff a total of three (3) times. Exhibit A; Exhibit C 1/5 (9:19 am), 1/19 (8:31 am), 1/31 (1:32 pm). The only time Plaintiff requested SWC to cease calling was during the 1/31 at 1:32 pm call. Exhibit D (SWC 0011 Call Recording 3).[2] After this call, calls were restricted to Plaintiff's alleged telephone number ending in 4211 on February 2, 2018. Exhibit A at 2; Exhibit C (No calls were placed to the number ending in 4211 after the January 31, 1:32 pm call) *Id*.; Exhibit C (1/31 1:24 AM note and on; 2/2/2018 11:19 AM notes).

---

[2] A CD containing copies of the call recordings is being mailed to the Court at the same time as the filing of this motion.

As can be heard in each of the three telephone conversations between SWC and Plaintiff, at no time in the first two calls does Plaintiff ever request SWC to not call, or state that SWC was calling at an inconvenient time or place. Exhibit D (SWC 0019 Call Recording 1; SWC 0010 Call Recording 2). Only in the third call did Plaintiff request the calls to cease. *Id*. (SWC 0011 Call Recording 3). Then afterwards, Plaintiff did not receive another phone call from SWC again. Exhibit A. Thus, SWC did not violate § 1692c(a)(1) as it never called Plaintiff outside of 8:00 am or 9:00 pm and further never called at a time or place known to be inconvenient to Plaintiff. Therefore, this Court should dismiss Plaintiff's § 1692c(a)(1) claims.

**D. SWC did not violate § 1692d(2) as at no point did SWC use profane, obscene or abusive language.**

Plaintiff alleges SWC violated FDCPA § 1692d(2) by stating "Pay your [explicative] bills!!!" Doc. 1 at 6. If this was said, it would be a violation. However, evidence shows that at no point did SWC ever use profane, obscene or abusive language of any kind. Exhibit D. Plaintiff may be remembering some of her own words instead.

FDCPA § 1692d(2) makes it a violation of the Act for a debt collector to engage in "[t]he use of obscene or profane language or language that natural consequence of which is to abuse the hearer or reader." 15 U.S.C. § 1692d(2). In the only three conversations that take place between Plaintiff and SWC, at no point does SWC's agent use any explicative language nor any other language that could be construed as obscene, profane, or which has the natural consequence to abuse Plaintiff. Exhibit D (recordings). As such, SWC is entitled to summary judgment on these claims.

**E. SWC did not violate §§ 1692d or d(5) as it did not engage in abusive, harassing or oppressive conduct, nor cause her phone to ring repeatedly or continuously with the intent to annoy, abuse, or harass.**

Plaintiff alleges SWC violated § 1692d by "relentlessly calling Plaintiff's cellular phone seeking immediate payment on the subject debt [and] continu[ing] to plac[e] the relentless calls after Plaintiff advised Defendant to cease placing collection calls to her cellular phone." Doc. 1 at 6. Plaintiff further alleges that SWC violated § 1692d(5) by "causing Plaintiff's cellular phone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of the subject debt with the intent to annoy, abuse, or harass Plaintiff." *Id*. The allegation is continued to state SWC "placed or caused to be placed no less than 27 harassing phone calls to Plaintiff's cellular phone." *Id*. The evidence conclusively shows Plaintiff received a grand total of six (6) calls over a period of twenty-seven (27) days and did not place any calls after she requested calls to cease. Exhibit A at 2; Exhibit C.

FDCPA § 1692d is a catch all provision prohibiting a debt collector to "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Next, FDCPA § 1692d(5) prohibits a debt collector to "caus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). The evidence attached and detailed above conclusively establishes SWC did not violate either of these provisions.

Although whether a collector's conduct constitutes harassment is normal a question of fact, "courts have recognized that, in certain cases, this question can be resolved as a matter of law." *Clayton v. Asset Plus Companies*, *LP*, No. 4:13-CV-2862, 2014 WL 6388430, at *2 (S.D. Tex. Nov. 14, 2014); *see, e.g.*, *Lee v. Credit Management, LP*, 846 F. Supp. 2d 716, 725 (S.D. Tex. 2012) (granting summary judgment in favor of defendant because debt collector called plaintiff "a handful of times" and spoke to him briefly); *Clingaman v. Certegy Payment Recovery Services*,

No. H–10–2483, 2011 WL 2078629, *4 (S.D. Tex. May 26, 2011) (granting summary judgment in favor of defendant where defendant placed fifty-five calls to plaintiff in three and a half month period); *Karp v. Fin. Recovery Servs. Inc.,* No. A12–CA–985 LY, 2013 WL 6734110, *7 (W.D. Tex. Dec. 18, 2013) (granting summary judgment in favor of defendant where defendant placed six calls to plaintiff in two weeks); *Carman v. CBE Group, Inc.,* 782 F. Supp. 2d 1223, 1229–32 (D. Kan. 2011) (granting summary judgment in favor of defendant where defendant called plaintiff 149 times in a two month period); *Tucker v. CBE Group, Inc.,* 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (granting summary judgment in favor of defendant because "[d]efendant only left a total of six messages, made no more than seven calls in single day, and did not call back the same day after leaving a message.").

Further, these claims require Plaintiff to prove more than just the fact that calls were made. To prove a claim under § 1692d, a plaintiff must show that the repeated calls were made *with the intent* to annoy, abuse, or harass. *See Gorman v. Wolpoff & Abramson, LLP,* 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), *rev'd on other grounds,* 584 F.3d 1147 (9th Cir. 2009) [emphasis added]. "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). Courts may resolve this question as a matter of law in appropriate cases. *Jeter*, 760 F.2d at 1179-80; *see Arteaga v. Asset Acceptance, LLC*, No. CV-F-09-1860 LJO GSA, 2010 WL 3310259, at *5 (C.D. Cal. Aug. 23, 2010) ("Although there is no bright-line rule, certain conduct generally is found to either constitute harassment, or raise an issue of fact as to whether the conduct constitutes harassment, while other conduct fails to establish harassment as a matter of law.").

"In determining liability under § 1692d(5), courts often consider the volume and pattern of calls made to the debtor."[3] *Krapf v. Nationwide Credit, Inc.*, No. SACV 09-00711 JVS (MLGx), 2010 WL 2025323, 2010 U.S. Dist. LEXIS 57849 *6-8 (C.D. Cal. May 21, 2010). Courts have found that "frequent or even daily debt collection phone calls over a period of months may be insufficient to state a claim under Section 1692d(5)." *Clayton*, 2014 WL 6388430, at *2. When courts do find a violation, it is usually because there is "a high volume of phone calls . . . typically accompanied by allegations of other objectionable conduct." *Id.* Such egregious conduct might be "calling immediately after hanging up, calling multiple times in a single day, calling places of employment, family, or friends, calling at odd hours, or calling after being asked to stop." *Waite v. Fin. Recovery Servs., Inc.*, No. 8:09-CV-02336, 2010 WL 5209350, at *3 (M.D. Fla. Dec. 16, 2010).

For example, "a debt collector does not necessarily engage in harassment by placing one or two unanswered calls in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages." *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009). Also, "daily" or "nearly daily" phone calls alone fail to raise an issue of fact for a jury to determine whether the conduct violates § 1692d. *See Arteaga*, 2010 WL 3310259, at *16. Finally, while calling 57 times over a 20-day period appeared "somewhat high," defendant's conduct still failed to constitute a violation of § 1692d(5) as a matter of law where defendant left a total of six messages, made no more than seven calls in a single day, did not call back the same day after leaving a message, and did not repeatedly make calls after it was asked to cease. *See Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d

---

[3] "Courts have held that '[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.'" *Brandt v. I.C. Sys., Inc.*, No. 8:09-cv-126-T-26MAP, 2010 WL 582051, at *2 (M.D. Fla. Feb. 19, 2010) (quoting *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 505 (D. Md. 2004)).

1301, 1305 (M.D. Fla. 2010); *see Katz v. Capital One*, No. 1:09-cv-1059 (LMB/TRJ), 2010 WL 1039850, at *3 (E.D. Va. Mar. 18, 2010). In *Toth*, this Court found no 1692d violation when the collector was "simply attempting to explain, through frequent interruptions, Defendant SMA's relationship with Plaintiff Toth's debt." *Toth v. Stephens & Michaels Assocs., Inc.*, No. 2:13-CV-0372-GMN-VCF, 2015 WL 3551269, at *4 (D. Nev. June 5, 2015).

There is no evidence of any actions or conduct that would rise to the level of an FDCPA violation in this case. Plaintiff's allegations under §§ 1692d and d(5) boil down to asserting SWC continued placing relentless calls after she advised SWC to cease calling and that SWC caused her phone to ring repeatedly and continuously to engage her in conversation with intent to annoy abuse or harass her. <u>Doc. 1</u> at 6. These allegations are factually incorrect and easily disproven.

The account notes and call recordings show she never requested calls to cease until the last conversation. <u>Exhibit A</u>; <u>Exhibit C</u>. Thereafter, no more calls were placed. *Id*. Thus, these allegations are unsupported, false, and warrant summary judgment in favor of SWC. Next, there is no evidence that Defendant engaged in any activity that was intended to harass, oppress, or abuse Plaintiff. There were six (6) calls over twenty-seven (27) days. <u>Exhibit A</u>; <u>Exhibit C</u>. This averages less than one (1) call every four (4) days. There were no days with multiple calls. *Id*. Much higher rates of calling have been found not sufficient to constitute a 1692d(5) violation. *Carman,* 782 F. Supp. 2d at 1229–32 (149 calls in a two-month period, roughly 2.5 a day); *Tucker*, 710 F. Supp. 2d at 1305 (57 calls in 20 days, roughly 2.85 a day). Even if Plaintiff complains of daily calls, this is not necessarily grounds for an FDCPA violation. *Clayton*, 2014 WL 6388430, at *2. There was no oppressive conduct and there were no threats by SWC's agents in the three conversations. *See Saltzman*, 2009 WL 3190359, at *7 (missed calls without oppressive language is not harassment). Conduct that has been held to be oppressive, such as calling immediately after hanging up, calling

places of employment, family, or friends, or calling at odd hours did not occur in this case. *Waite*, 2010 WL 5209350, at *3. The evidence and case law conclusively supports granting this Motion for summary judgment on each of Plaintiff's claims under FDCPA §§ 1692d and d(5).

**F. SWC did not violate the TCPA as it does not use an ATDS.**

Plaintiff alleges that SWC both negligently and willfully violated the TCPA by placing "frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") or prerecorded or artificial voice without Plaintiff's prior consent…." Doc. 1 at 7-8. The elements of a TCPA claim are: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2009); 47 U.S.C. § 227(a)(1). SWC did not place any telephone call to Plaintiff's telephone with an ATDS. Therefore, CBE is entitled to summary judgment as a matter of law.

The TCPA prohibits the use of an ATDS to make any calls to a cellular telephone service without the prior consent of the called party. 47 U.S.C. § 227(b); *see, e.g., Crawford v. Target Corp.*, No. 3:14-CV-0090-B, 2014 WL 5847490, at *3 (N.D. Tex. Nov. 10, 2014). An ATDS is equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers. 47 U.S.C. § 227(a)(1). "A predictive dialer is 'hardware, when paired with certain software, [which] has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers' without human intervention." *Strauss v. CBE Grp., Inc.*, No. 15-62026-CIV, 2016 WL 1273913, at *3 (S.D. Fla. Mar. 28, 2016). The FCC recently held that equipment with the potential to be a predictive dialer could qualify as an ATDS under the TCPA. *In the Matter of Rules &*

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015). However, this does not extend to "every piece of malleable and modifiable dialing equipment that conceivably could be considered to have some capacity, however small, to store and dial telephone numbers." *Id*. The key concern is whether it has "the capacity to dial numbers without human intervention." *Id*.; *McGowan v. Credit Mgmt. LP*, No. 2:14-cv-00759-APG-VCF, 2015 U.S. Dist. LEXIS 129610, at *19 (D. Nev. 2015) ("[G]enuine issues of fact remain regarding whether Credit Management's system uses a predictive dialer and has the capacity to dial telephone numbers from a list without human intervention.").

SWC uses a telephony system known as LiveVox HCI. Exhibit A at 2. All calls placed to the telephone number ending in 4211 were made with this telephony system. *Id*. LiveVox HCI is a telephony system that requires direct human intervention to make calls which has been repeatedly held not to constitute an ATDS, including in this District. *Arora v. Transworld Systems, Inc.*, Case No. 1:15-cv-04941 (N.D. Ill. Aug. 23, 2017); *see also Pozo v. Stellar Recovery Collection Agency, Inc.*, Case No. 8:15-cv-929-T-AEP (M.D. Fla. Sept. 2, 2016) (holding that LiveVox HCI was not an ATDS because the system "required its representatives to manually dial all calls and was not capable of making any calls without human intervention"); *Smith v. Stellar Recovery, Inc.,* No. 15-CV-11717, 2017 WL 1336075, at *6 (E.D. Mich. Feb. 7, 2017)*, report and recommendation adopted,* No. 2:15-CV-11717, 2017 WL 955128 (E.D. Mich. Mar. 13, 2017)*, reconsideration denied,* No. 2:15-CV-11717, 2017 WL 1362794 (E.D. Mich. Mar. 29, 2017); *Schlusselberg v. Receivables Performance Management, LLC*, Case No. 3:15-cv-07572-FLW-TJB (D. N.J. June 29, 2017); *Fleming v. Associated Credit Sers., Inc.*, Case No. 2:16-cv-03382-KM-MAH (D. N.J. Sept. 21, 2018); *Hatuey v. I.C. System, Inc.*, Case No. 1:16-cv-12542-DPW (D. Mass. Nov. 14,

2018). Because SWC used LiveVox HCI for each call to Plaintiff, it could not have violated the TCPA, negligently or willfully. SWC is entitled to summary judgment on Plaintiff's TCPA claims.

## G. Plaintiff has not suffered any damages

Plaintiff's deposition testimony, attached as <u>Exhibit E</u>, shows that Plaintiff has not suffered any damages as the result of any conduct by SWC. Plaintiff claimed in her complaint that SWC's actions "severely disrupted Plaintiff's daily life and general well-being" and caused damages to her cell phone. <u>Doc. 1</u> at 4. In her deposition, Plaintiff testified that SWC's action did not cause her any harm at her place of employment, did not cause her any economic harm, did not damage her cell phone, and did not cause her to seek any medical treatment. Exhibit E at 6-11 (*Deposition of Plaintiff* at 41-46.). Plaintiff sole testimony as to the "severe disruption" SWC called is that the calls occasionally made her angry. *Id.* at 10 (*Deposition of Plaintiff* at 45:6-13). When asked what Plaintiff wanted from this lawsuit, Plaintiff stated that she wanted the calls to cease, which has already happened. *Id.* at 12 (*Deposition of Plaintiff* at 50:21-24). Plaintiff could not even identify what damages she was seeking in this case. All this goes to show that Plaintiff has not suffered any damages from the result of any actions by SWC. SWC is entitled to summary judgment on any of Plaintiff's claims for damages.

## III. CONCLUSION

The facts of this case show that SWC is entitled to summary judgment. There were only six (6) calls over a twenty-seven (27) day period. SWC only spoke to Plaintiff three (3) times. The only person who used any foul language on the calls was Plaintiff. Only during the last call did Plaintiff request SWC cease calling, at which point SWC no longer made any calls to Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Defendant Southwest Credit Systems, L.P. respectfully requests this Court enter judgment in favor of Southwest Credit Systems, L.P and dismiss all of Plaintiff's claims with prejudice.

Dated: February 11, 2019.

Respectfully submitted,

**MALONE AND MARTIN PLLC**

/s/ Robbie Malone
ROBBIE MALONE
Email: rmalone@mamlaw.com
EUGENE XERXES MARTIN, IV
Email: xmartin@mamlaw.com
**MALONE AND MARTIN PLLC**
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631

***COUNSEL FOR DEFENDANT***
***SOUTHWEST CREDIT SYSTEMS LP***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing has been forwarded through the **CM/ECF** system on this 11th day of February, 2019.

**Alexander J. Taylor, Esq.**
**Marwan R. Daher, Esq.**
**Omar T. Sulaiman, Esq.**
**Ahmad Tayseer Sulaiman**
**Mohammed Omar Badwan**
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com
mdaher@sulaimanlaw.com
osulaiman@sulaimanlaw.com
ahmad.sulaiman@sulaimanlaw.com
mbadwan@sulaimanlaw.com

/s/ Xerxes Martin
XERXES MARTIN